Bodle v. TXL Mortgage Corporation. Okay, Mr. Sturm, I guess we cheated you out of it, didn't we? Uh, yes. I can't believe that guy is in the middle of a trip to New Orleans. I don't know whether that's good or bad. I've been here with you this morning, Judge. May it please the court. My name is Charles Sturm and I am pleased to represent the appellants in this case. There are two issues I'd like to visit with you this morning about. The first is whether the release at issue in this case waved appellants' claims to overtime, and the second issue, of course, whether the prior state court lawsuit filed by TXL precluded the appellants from bringing their later federal case. I'd like to start with the first issue. The Supreme Court, the Fifth Circuit, and TXL all agree with the following proposition of law. I'm going to quote from TXL's brief before this court. Quote, the Supreme Court has repeatedly held that a covered employee's substantive rights under the FLSA are not waivable, and then TXL itself cites five Supreme Court cases that stand for that proposition. The last of which- There's only one exception to that that's not applicable here. That's exactly right, Judge. At the number of hours. That's exactly right, Judge. The only exception, as the Court is aware, is the Martin V. Springbreak case, which followed the reasoning in Martinez v. Bowles, which says that if you look at all of these Supreme Court cases in the legislative history, we can discern an exception to that general rule that if there is a bona fide dispute about overtime, that is, whether the employees are actually entitled to overtime, including the number of overtime hours that they worked, or the amount of compensation that has to be due for the overtime, and those are the facts in both Martinez and in Martin V. Springbreak, and those are not the facts in this case. The TXL has used as a hook that there was a bona fide dispute in the first state court case about regular wages. These employees were not paid their regular salary, and they were not paid some commissions, which totaled about $120,000. And those claims were raised, and we concede that they were released in the state court lawsuit and that the appellants received consideration for those claims. But it is also undisputed that the plaintiffs never raised an overtime case, never said that they were entitled to overtime, or that they had hours that they had worked for overtime, or that they were due compensation for their overtime. That fact is not in dispute. Even the district court agreed with that fact. The district court itself noted that there was, quote, was a difference between regular wages and overtime wages and agreed that no dispute, no bona fide dispute existed as to whether or not they were entitled to overtime. There are two cases, of course, that follow the reasoning that we are urging the court to rule in this case that follow and extend the reasoning of Martinez v. Bulls and Martin v. Springbreak. We've cited them in our brief. Those are Honkey and, well, I can't find it in front of me, Judge, but it's in the brief. But in both of those cases, one of them is a Western District of Texas case. In both of those cases, the court said, we agree. In both of those cases, there was a release signed by the employees. And the district court said, yes, a release can be effective to release overtime claims, but there has to be a bona fide dispute about the number of overtime hours or the amount due. And in those cases, even though the plaintiffs were represented by a lawyer, because there was no discussion with the defendant employer about overtime, that the general release in those cases were not effective to release the overtime claims. Was it the Sims case? The Sims, yes. Thank you, Your Honor. I apologize for that. So both of those cases, I think, are directly on point and follow the facts of this case and the critical distinction. And look, we concede, if we had raised overtime in the state court lawsuit, even though it was pled, the lawsuit was from TXL against our plaintiffs for violations or violations of their non-compete agreement, we agree. If we would have said, hey, there's salary and commissions and there's also some overtime claims, they worked overtime, they weren't paid, even if the release didn't say that they were being compensated for overtime, the same release that we have here that didn't mention the overtime claim, if there was an actual bona fide dispute about the number of hours that they worked for overtime and the amount of compensation that they were due for overtime, then their claims would have been released. And we would concede that we should lose under the holding of Martin v. Spring Break. We're not arguing on appeal that Martin v. Spring Break was decided incorrectly, that it should be ignored. Of course, it can't. We're simply saying that the rationale and the reasoning for Martin v. Spring Break do not apply to this case, simply because it's undisputed that the appellants received no consideration in the settlement for their overtime claims. That's also undisputed. I also want to raise, I think, what the practical effect of the district court's opinion is if it's not reversed. The district court said, I'm going to quote one sentence from its opinion. It talks about the fact that there were these negotiations between the employees and the employer and that the employees knew that they had an overtime claim and there's no doubt, must presume, as they were represented by Fulbright, one of the best law firms in the country, that they also knew about potential overtime claims, that the plaintiffs didn't tell the defendants that they intended to sue for the overtime violation. And in fact, they signed their consent before they signed the release. The district court said, quote, it was bodil and beech's prerogative to either carve claims for overtime wages from the settlement agreement or to raise such claims during negotiations prior to executing the settlement agreement. So the district court says, if an employee is handed a general release where no one has discussed overtime claims, no one has discussed how much might be due, whether there is a dispute about overtime, if the release is silent, then it is the obligation of the employee to tell the defendant that they might bring an overtime claim and to carve it out of the general release or it is waived. And that one sentence should demonstrate the fallacy of the reasoning of the district court because if that is true, then first all of the Supreme Court cases that say an employee can't waive an FLSA claim cannot also be true. But here's the practical effect. It thwarts Congress's intent in the FLSA to guarantee minimum wage and overtime to employees. Because here's what happens in the normal case. I'm an employment lawyer and I do this almost exclusively. An employee gets fired. The employee goes to the, the employer goes to the employee and says, hey, we're letting you go. We'd like to give you maybe a couple weeks severance. Sign this general release. They're under 40, so there's no 21-day waiting period as they would be for an older worker. And the employee, if the employee does not then tell the employer, hey, employer, even if the employee doesn't know that they have a claim, I, we must carve out of this general release my ability to sue you later for overtime. And if the employee doesn't do that because the district court says in that circumstance it's the employee's burden, then the employee cannot sue later for overtime and that means their substantive rights under the Fair Labor Standards Act will have been waived. And so that obligation stated by the district court is totally at odds with the legislative history of the Fair Labor Standards Act and the five Supreme Court cases cited by TXL in its brief. They can't both be true. It can't both be true that an employee cannot waive their Fair Labor Standards Act rights and an employee must tell the employer before signing a general release that they intend to sue and carve it out of a release or it's waived. Those both premises are totally at odds with each other. And I think that sentence demonstrates the flawed rationale of the district court's opinion in this case. I also want to mention, I think, something as the sort of pink elephant in the room or in the case, and that is the conduct of the appellants in their counsel in this case in obviously having an intent to sue under the Fair Labor Standards Act before they sign the release. And I want to bring it up because I think it demonstrates or it just sort of shows the rationale or maybe some of the motive in this case behind the district court's opinion. TXL made a big deal in the district court about this fact. And they said it was shameful and outrageous, including the lawyers. They personally attacked the lawyers, that the lawyers would have their clients sign a release and tell them that the release was not effective for the Fair Labor Standards Act case and then not tell the defendants. And I'd like to respond to that here. I also think the district court was somewhat persuaded by that argument. It is not for the courts to rescue people from their mistakes. And both sides are represented by capable lawyers, as I said, TXL was represented by court-certified labor and employment lawyers. The employees in this case didn't pull the wool over TXL's eyes. They had the same knowledge as the employees did. The law was very clear when this release happened. And remember, this release was signed before Martin v. Spring Break was decided about two weeks. But we were still aware of the Martinez v. Bowles opinion, the district court case, even though that at the time was a minority opinion and was not followed by the majority of other courts around the country and in the Fifth Circuit, we were still aware of that rationale. And we were still comfortable with that because even under that opinion, of course, you had to have a bona fide dispute about overtime, hours worked or amount due for overtime. And there was no dispute in this case about that. In fact, when TXL found out, these are not the lawyers that represented them in the district court, but when TXL found out about the signed consent being signed before the release was signed, they protested, they wrote nasty letters to the plaintiff's lawyers, and then they also attempted to go to the state court and remove their consent for the agreed judgment. They felt like they had been tricked. And then the plaintiff's lawyers in this case told them, they said, look, you should have known we're not pulling the wool over your eyes. We never discussed a claim for overtime in this case. The plaintiffs in this case were not compensated for overtime. There was no consideration given because we can see consideration doesn't mean that the employer had lessened some of their demands in the settlement. That would have been consideration. We can see that would have been different. But we told them, you shouldn't feel tricked because you knew that you didn't give anything in the settlement for the overtime claim. And then after receiving that letter, they went to the state court and said, okay, let's go forward with the settlement. It's not wrong to use the law to your client's advantage. The law is filled with examples where a general release is not effective, and good lawyers should know that. So, for example, under the Older Worker Benefit Protection Act, if someone is over 40 and the employer gives them a general release, it's not effective to waive their claims for age discrimination. And this court would have no sympathy for an employer that came before it and said, we felt tricked because we had the employee sign a general release, we didn't follow the law, that was very clear at the time, we gave them the release, and then they went ahead and sued us. And that's wrong. Well, it's not wrong. They knew the law or had the opportunity to know the law, just like the plaintiffs did. And if they didn't follow the law, then they should lose. And there's nothing wrong with the lawyer that represents the employee from counseling the employee to follow the law and to rely on the law. Well, I see that my time is up, or almost up. I will save the rest of my time for rebuttal. Yeah, you've saved time for rebuttal, Mr. Sturm. Thank you. Thank you, Judge. Mr. Hontan. May it please the court. I would like to say, when I'm through, I'll be taking Mr. Sturm to the Palace Cafe for lunch. But sadly, it is not so. I hope he's willing to settle for Subway. So look forward to seeing the court maybe next time in New Orleans. But it's a pleasure to be in front of you, wherever you may be sitting. My name's Levon Hovnatanyan. And I represent the Appleys, in this case, TXL Mortgage, and William Dale Couch. The first point I want to make is that there is a second part of the court's holding in Martinez v. Spring Break, which it issued in 2012. Parties may compromise FLSA claims where there is a bona fide dispute. As to the amount of hours worked, yes. But the rest of the sentence is, or compensation due. And that's the part of the holding in Martinez that applies here. It's the only part that can apply here. Because there could never be a dispute in this case about hours worked, or the amount of hours worked, because these weren't hourly employees. They were salaried employees. So that's the second part of Martinez is the part that applies here. That's where the bona fide dispute was. It was over compensation due. In that regard, the parties went back and forth and completely agree. This is not Mr. Sturm and his firm, or me and my firm, but the underlying lawyers for the plaintiff and the defendants in this case. They went back and forth, and their emails are in the record, about wages. And that was the term that both those lawyers used. What we're talking about is wages. Commissions, certainly. Salary, certainly. But the global term of wages. Now, in that regard, Magist- Well, the term, or compensation due, is such a broad term. I mean, it's perfectly proper for you to point it out to us. But if that applies, then anything could be waived under the FLSA, it seems to me, because it all has to do with, that's what it's all about, is compensation. Well, Your Honor, and actually, I think under circumstances like this, that's exactly right. In a case like this, when the parties go back and forth and they talk globally about wages, I think that's right. I think your FLSA rights in a situation like that, under cases like Martin and Martinez, can be waived. And the district court explained why. In a particularly perceptive sentence, well, not the district court, but the magistrate, Magistrate Johnson, in a particularly perceptive sentence said, this is on page 240 of the record, that wages for commissions and salary are not the same as wages for overtime, does not alter the fact that each constitutes a form of wages. And that's exactly right. That's why, when these parties are negotiating back and forth, and each giving up valuable consideration to the other, ultimately in the form of a mutual release, that's why FLSA rights were definitely at stake here. And there's no question that the plaintiffs knew about those rights, because they had signed the consent agreement to be party's plaintiff in an FLSA lawsuit when the negotiations were going forward. There's no question they knew about their FLSA rights, and they were represented by counsel at every stage of the litigation. Well, is there any question the defendants knew about FLSA rights? Your Honor, that's not reflected in the record, but I agree with Mr. Sturm that the answer is probably yes. Fulbright and Jaworski employment lawyers are going to know about the FLSA. It would certainly be my presumption. And again, I'll quickly reiterate, that's not in the record, but I think it's a safe assumption that they knew the FLSA rights. And the underlying lawsuit in this case had to do with non-compete covenants? That was part of it, yes, Your Honor. Only part of it, but that was certainly part of it. So, and of course, the other key is they did have the opportunity. The defendants didn't know. The defendants didn't know that this is undisputed, that the other side was contemplating bringing an FLSA lawsuit. The plaintiffs had already signed consent agreements. It's undisputed the defendants didn't know that. So it's the plaintiffs that have an opportunity to say, look, we're gonna sign this release, we agree, but we need to carve out some FLSA claims. And the defendant had an opportunity to say, we're gonna sign a release and we need to make sure we deal with these potential FLSA claims. Well, Your Honor, well, and that's what happened. Because the release says, the release specifically refers to, and this is a quote from it, any federal law statute or regulation. It uses the word any. Now that might sound very broad, and that's what it was intended to be. Because the next sentence in the release says, this is meant to be and shall be construed as a broad release, a broad release. Any federal law statute or regulation. In the context of the parties going back and forth negotiating over wages. It's no wonder Magistrate Johnson found as she did. FLSA rights were at issue. Well, Mr. Sturm correctly points out, but they weren't specifically mentioned. And they weren't, but they didn't have to be. Not only for Judge Johnson's reason or Magistrate Johnson's reason, okay, that their wages like the other wages, but also because of what the Martinez court said. The same thing was true in Martinez, which is the opinion that this court adopted and endorsed in Martin versus Spring Break. In Martinez, and Judge Rodriguez was very careful to point this out. The document signed by plaintiff contains no language directly addressing the FLSA or any statutory rights there under. The release in that case didn't say anything about the FLSA either. But Judge Rodriguez went on to cite this court's Strozier opinion from 1981, which was a Title VII case. And Judge Rodriguez said, in other contexts, a release of statutory rights need not specifically address the statutory right. Citing Strozier, that's exactly what this court held in Strozier. So Judge Rodriguez concluded the June 2nd, 2003 document is therefore not invalid because of the failure to specifically address the FLSA or other rights under the statute, and that is precisely the holding that would apply here. So would I be wrong if the way I read Brooklyn Savings Bank, even if you had an agreement that explicitly said I'm waiving FLSA claims, you couldn't waive those claims? I think under Brooklyn Savings Bank versus O'Neill, Your Honor, that's correct. But the difference is the law has changed dramatically since that case, since O'Neill. I don't disagree, under O'Neill, that's exactly right. Under O'Neill, and I'll go one step further, under Ganji, that's exactly right. There's a fascinating passage, not several paragraphs, actually more than a passage, in Martinez, where Judge Rodriguez sets out the sort of, how did we get to where we are today, part of the FLSA? And one of the points he made was Ganji and the bad old days, okay? Those are the bad old days where these claims couldn't be settled. And as a result, there was a litigation boom. People sued their employers, employers sued their employees. Congress wasn't happy with that, so in 1947, they went back and they tried to amend, or they did amend, the FLSA. And they passed what became known as the Portal to Portal Act of 1947. They said this will clear it up. Of course it did not. And Judge Rodriguez described the reaction to the Portal to Portal Act as quick and vocal, and he didn't mean that in a positive way. It didn't help, because the language that were in the amendments was confusing enough that we had the same stalemate. Employers never self-reported, even when they were wrong and there had been underpayments. And employees quickly sued, because they didn't have any other choice. So we lurched along to 1949, and Congress amended the FLSA again. For a while, there was quiet. And then this court was the first court in 1975 in Allegheny-Ludlam to finally let a ray of sunshine in. And the court's opinion said, the 1949 amendments, they're not great. They're not crystal clear. But we discerned the congressional intent to be, private parties can settle these claims. And so we're gonna start saying, private parties under the right circumstances can settle these claims. Finally, this court said, we're gonna let private parties settle, even though it's the FLSA. So we go along to 2012, and this court issues Martin versus Spring Break. And says, if there's a bona fide dispute over hours worked or compensation due, there can be a settlement. We're looking for what Judge Rodriguez pointed out in Martinez. We're looking for a bona fide dispute. That's what Magistrate Johnson says we have here, and the record supports her. This is the second part of Martin. It is a compensation due case. It is a Martinez case, where the settlement agreement does not specify FLSA. And Judge Rodriguez correctly said, relying on this court's precedent. So you may have had a bona fide dispute about something that, for the most part, wasn't even discussed. Is that right? Yes, that is right. FLSA specifically was not discussed, Your Honor, but wages were. And that's the key. That's what Magistrate Johnson said the key was. And of course, and again, it brings me right back to Martinez, where the court said, the release doesn't even have to say FLSA. It doesn't even have to mention it, based on this court's Strozier opinion. When you have a release that says what this one does, any federal law, statute, or regulation, and the very next sentence says, this is intended to be a broad release, that released the FLSA claims. It released them. It wouldn't be true, said this court in Martin, if they didn't know about those rights, but they did, having signed the consent agreement during settlement negotiations. And they had a lawyer. And they had the opportunity to carve out FLSA claims. Those facts were important to this court in Martin, because it distinguished this case from cases like Lynn Holmes, which the 10th Circuit decided, or arguably, I'm sorry, the 11th Circuit. Arguably, that's the only circuit left that still frowns on private parties releasing FLSA claims, and says, we're queasy about it. Most of the other circuits have come in line with Allegheny Ludlam since 1975 and said, no, you can do it if there's a bona fide dispute, as in this case. And so, it is a Martin versus Spring Break case. It is a Martinez case. Now, I will say, there's another line of cases out there, and it culminates, in this court's opinion, in Pepsi Americas, where the court says, you can't do this. You can't have private parties settling these cases. But those are set-off cases, and they're only set-off cases. I'm talking about Heard and Singer and Gagnon, and then ending with Pepsi Americas. But, of course, no party in this case is trying to set anything off. In Pepsi Americas, this court said, you can't have a set-off unless the money that you're trying to set off can be considered prepaid wages. In other words, the employer accidentally overpaid, and now is saying, okay, we want some of our money back as far as overtime. But we're not saying that. We're not alleging set-off. There is no set-off theory in this case, so it doesn't fall within Pepsi Americas. It comes within Martin versus Spring Break and Martinez. I'll conclude by going back to a thought-provoking question that Judge Smith asked in the previous case. If this court were going to write an opinion favoring your position, counsel, what would that opinion say? What a great question. Well, as applied to this case, here's what, respectfully, your honors, I think it would say. I think it would say what the court said toward the conclusion in Martin versus Spring Break, where Judge Higginson wrote, FLSA rights were not waived, but instead validated through a settlement of a bona fide dispute, which appellants accepted and were compensated for. The very facts that occurred here. For these reasons, we ask the court to affirm Judge Lake's judgment. All right, thank you, Mr. Habertanian. Mr. Sturm, you saved time for rebuttal. Judge Smith. There's a lot to respond to there. Yes, Judge. I think there were a couple of questions to Mr. Habertanian about the argument that or the distinction made by TXL that a release can be effective if there is a bona fide dispute about compensation due, quote unquote. The clear implication and modifier that's missing from that sentence is compensation due for overtime. When the courts wrote compensation due in Martin v. Spring Break and in Martinez v. Bowles, it was very clear from the discussion of the legislative history, the amendments to the Fair Labor Standards Act, all of the Supreme Court cases, and all of the arguments about why we should allow private settlements in some circumstances. In all of those discussions, the clear implication was it was compensation due not in the abstract, not compensation due for regular wages, not compensation due for a discrimination claim, not compensation due for reimbursement of expenses from the company, not just any compensation. It was very clear when you look at the cases that it was compensation due for overtime. And in the facts of Martinez v. Spring Break, it's very clear those are the facts we're talking about. In fact, in Martinez v. Bowles, even though the release was silent, the employer had the employee sign a document that said, I, employee, know that I'm due overtime. So in the facts of that case, it's very clear there was a bona fide dispute about overtime, either the number of hours due for overtime or the amount of compensation due for overtime. Let's all be, I think we'd have to be very disingenuous to say that this case fits in the rubric of Martin v. Spring Break because we had a bona fide dispute about regular wages. To be clear, if the court affirms the district court's opinion, the only way to do so is to expand the holding of Martin v. Spring Break and say that it applies to exactly what they're arguing, that it is any compensation due. And I think that is contrary to the entire legislative history of the Fair Labor Standards Act and all of the five Supreme Court cases that are listed in the brief. I also want to address another point raised by Mr. Havnatanian that the law has changed somehow between after Brooklyn Savings. It hasn't. That was a case in the 1940s. As recently as 1981, the Supreme Court reiterated the general legal proposition that an overtime claim cannot be abridged by contract or by waived. And if that's not enough- That was still over 30 years ago. Sure, Judge. But even in Martin v. Spring Break, Justice Smith, the panel in that case said, we agree with Barantine. And you cannot waive an FLSA claim and it cannot be abridged by contract. But they said, they accepted that as the law, but they said that it's not a waiver here, because we had a negotiated settlement with a bona fide dispute about overtime, and therefore it's not a waiver. That's not what happened here. So the law hasn't changed. Again, as recently as Martin v. Spring Break, the Fifth Circuit reiterated that proposition of law. I want to repeat the argument I made earlier about how important this case is if it's not reversed, and the effect that it will have. The example I gave earlier of an employee being forced to sign a general one-page waiver when they're being terminated, who does not have counsel, or even if they do, but maybe not all lawyers know about overtime. And if they don't affirmatively raise and carve out the FLSA claim from their employer, then the release is effective to terminate their Fair Labor Standards Act rights. I think that is so clearly contrary to all of the Supreme Court cases, and Martin v. Spring Break, and Martinez v. Bowles, that it definitely requires reversal. The district court's holding cannot be reconciled with Martin v. Spring Break or Martinez v. Bowles, and therefore we ask that the district court's opinion be reversed. Thank you, your honors. Thank you, Mr. Sturm. Your case and all of today's case.